UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHERINE SUMNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02-CV-0605-CVE-FHM |
| ) | |
| CONTINENTAL CASUALTY COMPANY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff filed this action to recover benefits and enforce her rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Plaintiff challenges the decision by Continental Casualty Company ("Continental") to terminate her long-term disability ("LTD") benefits under the Dollar Thrifty Automotive Group, Inc. Group Disability Plan (the "Plan").

### I.

As an employee of Dollar Thrifty Automotive Group, Inc. ("Dollar"), plaintiff was covered under the Plan effective January 1, 2000. Administrative Record ("Adm. Rec.") at 163. Plaintiff was a customer service representative at Dollar. According to Dollar, the essential duties of a customer service representative include reviewing complaints from customers, entering complaints into the computer database, typing letters in response to complaints, and related responsibilities as assigned. Id. at 87-90. Dollar's job description states that a customer service representative must "be on the telephone 70% of the time, working under difficult and stressful conditions." Id. at 90. The physical requirements of the job include: constant (67-100%) grasping, talking and hearing; frequent (34-66%) sitting, seeing, and repetitive motions; and occasional (0-33%) standing, walking,

lifting, and reaching. Id. at 88-90. Essentially, plaintiff's occupation is sedentary in nature. See id. at 95.

The Plan is not self-funded by Dollar, but rather insured and administered by Continental. Id. at 1. The Plan provides LTD benefits to eligible participants. The Plan provides:

> When making a benefit determination under the policy, *We* have discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy.

Adm. Rec. at 10 (emphasis in original). Thus, Continental is granted discretion to manage the Plan.

As an active full-time non-exempt employee, plaintiff is a Class 4 Plan participant. Id. at 6. For Class 4 participants, the Plan establishes that:

> *"Disability"* means that during the *Elimination Period* [of 90 days] and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1.   continuously unable to perform the *Material and Substantial Duties of Your Regular Occupation*; and
> 2.   not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

Id. at 13 (emphasis in original). The Plan requires that an employee be "actively at work" to be eligible for benefits. Id. at 11. "Actively at work" means that an employee must be "furthering the Employer's business" and performing essential duties of that employee's occupation on a full-time basis. Id. at 22. The parties dispute whether, approximately six months after plaintiff's elimination period ended, plaintiff continued to qualify as disabled under the Plan and whether defendant erred in terminating her benefits.

According to plaintiff, she stopped working on April 23, 2001 because of severe back pain. Prior to this, plaintiff was on extended medical leave due to a stillborn at term in August 2000. Adm. Rec. at 129. Shortly after ceasing work in April 2001, plaintiff visited Eric Wallis Sherburn,

M.D., of the Oklahoma Spine and Brain Institute.  Id. at 129-31.  After taking plaintiff's medical history and conducting a physical exam, Dr. Sherburn diagnosed her with degenerative disc disease. Id. at 127, 144.  When Continental approved plaintiff's initial LTD claim on July 20, 2001, it identified April 23 as the effective date of loss and calculated her ninety-day elimination period as April 23 to July 22, 2001.  Id. at 153.  As provided under the Plan, Continental initiated LTD payments on July 23, 2001.  Id. at 46-47.  Plaintiff's monthly LTD benefits were $846.40.  Adm. Rec. at 153.

In its June 20, 2001 approval letter, Continental notified plaintiff that the "usual duration of disability for someone with a similar condition . . . [is] 56 days from your date of loss."  Id. at 153. This letter instructed plaintiff that:

> you are required to have your attending physician provide the following information to support ongoing disability:
> • Basic Laboratory Data and other pertinent tests or consultations which illustrate the problem and its effect on your ability to work.
> • PLEASE NOTE: A NOTE FROM YOUR PHYSICIAN SIMPLY STATING HE/SHE IS EXTENDING YOUR DISABILITY WILL NOT BE ACCEPTABLE WITHOUT SUPPORTING MEDICAL DATA.

Id.  Approximately six months later, in a February 15, 2002 letter, Continental notified plaintiff that her LTD benefits were terminated effective February 6, 2002.  Id. at 54-55.

While plaintiff was receiving LTD payments, she was under the care of Dr. Sherburn.  On August 8, 2001, Dr. Sherburn performed bilateral lumbar fusion surgery on plaintiff's back.  Id. at 144-50.  He anticipated that she would be able to return to work within three months of the surgery. Adm. Rec. at 162.  Following surgery, Dr. Sherburn noted that she was doing "very well" on September 11, 2001 and "satisfactorily" on October 12, 2001.  Id. at 63, 65.  Specifically, Dr. Sherburn's September 11 office notes state that "[o]n exam, her wound is well healed.  She displays

5/5 motor strength in both lower extremities. Her gait and station are normal. A/P and lateral lubmosacral spine films produced in the office today show excellent position of her intervertebral grafts, as well as her posterior instrumentation." Id. at 65. The October 12 office notes confirm that plaintiff continues to experience back pain, but that she "has good motor strength in her lower extremities," "her gait is normal," and films show that her posterior instrumentation and intervertebral grafts continue to be well positioned. Id. at 63. Continental continued LTD payments beyond the anticipated three month disability period.

On January 28, 2002, Continental solicited from plaintiff additional "[o]bjective medical findings which support Your Disability." Id. at 70. Continental informed plaintiff that:

> Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s).

Adm. Rec. At 70. On February 7, 2002, Dr. Sherburn faxed Continental an assessment form on which he confirmed that plaintiff was "currently capable of performing work at this time which is primary seated in nature but does allow the flexibility to stand when needed and does not require lifting over 10 lbs." Id. at 60-61. On the fax, he wrote that plaintiff should not lift, bend, kneel or squat for the next six months. Id. In a telephone interview on February 12, 2002, plaintiff informed Continental that she could not sit for prolonged periods of time. Id. at 46. Based on Dr. Sherburn's release for plaintiff to return to sedentary work and the absence of objective medical evidence of plaintiff's continued disability, Continental terminated plaintiff's LTD payments, effective February 6, 2002. Id. at 54-55.

In April 2002, plaintiff appealed the termination of benefits. Adm. Rec. at 41-42. Subsequently, Dr. Sherburn wrote to Continental on May 7, 2002, retracting his conclusion on the

February assessment form.  Id. at 34 ("Unfortunately, I feel that I filled out this form regarding Ms. Sumner in error.").  Along with this retraction letter, Dr. Sherburn submitted his office notes from two visits with plaintiff.  In the office notes of February 7, 2002, Dr. Sherburn observed:

> [Ms. Sumner] appears to have evidence of solid fusion in the intertransverse region.  She also has increased viable bone in the intervertebral region as well.  There is no evidence of hardware failure and/or pullout.  Overall, I think Ms. Sumner is doing well given the magnitude of surgery that she has.  However, I do not feel that she is capable of working at this time.

Id. at 36.  The office notes of April 23, 2002 contain the following observations:

> On examination, her wound is well healed.  There is no evidence of subcutaneous fluid collections.  She has good motor strength in both lower extremities. . . .  If she demonstrates a solid bony fusion at [a year out from surgery], I would recommend hardware removal, as I think this may be a source of her back pain.  Because she continues to have so much back pain, I still do not feel that she is capable of gainful employment at the current time.

Id. at 35.  Despite Continental's requests, neither plaintiff nor Dr. Sherburn submitted additional medical evidence of disability following the August 2001 surgery.[1]

On June 12, 2002, Continental upheld the termination of plaintiff's LTD benefits.  Id. at 28-30.  Continental's Appeals Committee, which included a registered nurse, conducted an independent, comprehensive review.  The Committee held that:

> . . . the medical evidence illustrates a return in functioning at least equal to [or greater than] that which is required of you to perform the essential duties of your regular occupation.  That is to say, the medical evidence does not illustrate that beyond February 2, 2002, that your functional capacity remained less than a sedentary level.
>
> This position is best demonstrated in the totality of the medical evidence offered from your treating physician, Dr. Sherburn.  Although Dr. Sherburn indicates in his

---

[1] Continental requested objective medical findings.  The Court recognizes that chronic pain is a highly subjective medical condition, for which relatively few objective tests exist.  However, objective data may include x-rays, Magnetic Resonance Imaging ("MRI") scans, measurements of motor ability, range of motion tests, or physical functional capacity test results.

> office visit follow-up note of February 7, 2002 that he did not feel you were 'capable of working at this time', the findings upon physical examination did not support this opinion.
>
> Here, the A/P lateral lumboscaral x-rays taken at this visit demonstrated evidence of a solid fusion and increased viable bone in the intervertebral region without evidence of hardware failure and/or pullout. Although you described having muscle spasms in the spine with radiation up into the upper lumbar on lower thoracic region, you reportedly were doing well overall without reports of radicular pain and; with reports that overall, your back in [sic] improving. You were encouraged to increase your activity and were counseled on weight loss. . . .
>
> Finally, we appreciate Dr. Sherburn's opinion in his April 23, 2002 follow-up note indicating support for your continued work absence (and as expressed in his letter of May 7, 2002 received in this office on May 10, 2002), however, this opinion does not correlate to the findings on past physical examinations or; the examination perform at the April 23, 2002 visit. Here, although you complain of back swelling and pain (sometimes severe) for which you take skelaxin, on examination your wound was reported to be well healed with no evidence of swelling (subcutaneous fluid). The strength in your lower extremities was noted as 'good motor strength.' And, although the hardware that was placed in your back was suspected to be the cause of your reported back pain, x-rays of the spine illustrated good position of the grafts with a developing, solid arthrosis at all levels and; good positions of the hardware without evidence of failure or pullout.

Adm. Rec. at 29.

## II.

On July 30, 2002, plaintiff filed suit, alleging that defendant violated 29 U.S.C. § 1132 in terminating her LTD benefits. As a plan beneficiary, plaintiff has the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Specifically, section 1132(a)(1)(B) grants plaintiff the right "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." The default standard of review is de novo. However, when a plan gives the

claims administrator discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a challenge under section 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard.  See Firestone, 489 U.S. at 115 (courts must apply the appropriate standard "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under possible or actual conflict of interest.  Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").

Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, a "reduction in deference is appropriate" where there is an inherent or proven conflict of interest.  Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004).  It is disputed whether Continental has an inherent conflict of interest.  If plaintiff shows a conflict of interest, deference to the administrator's decision is reduced and the burden shifts to Continental to prove "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence."  Id.

In a conflict of interest situation, the determinative inquiry is whether the administrator's decision was supported by substantial evidence.  "'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].'  Substantial evidence requires 'more than a scintilla but less than a preponderance.'"  Sandoval v. Aetna Life and Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citations omitted).  "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the

7

terms of the plan to the particular case, untainted by the conflict of interest." Allison v. UNUM Life Insurance Co. of America, 381 F.3d 1015, 1022 (10th Cir. 2004). The Court considers the record as a whole, but it considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002); Chambers v. Family Health Plan Corp., 100 F.3d 818, 823 (10th Cir. 1996) ("The reviewing court may consider only the evidence that the administrators themselves considered."). The Court must "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (internal citations and quotation marks omitted). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. See Caldwell v. Life Ins. Co. of North America, 287 F.3d 1276, 1282 (10th Cir. 2002). Yet, the Court "will not set aside a [] decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co., Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

### III.

Apart from the opening and response briefs on the administrative record (Dkt. ## 12, 13, 16, 17), the parties filed numerous briefs related to the proper standard of review (Dkt. ## 14, 15, 25, 28, 30, 33, 35), the right to a jury trial (Dkt. ## 14, 15), the right to conduct discovery (Dkt. ## 14, 15), and the treating physician rule (Dkt. ## 18, 19, 21, 22). As an initial matter, the Court will address those peripheral issues.

The proper standard of review is the less deferential "arbitrary and capricious" standard articulated in Fought, 379 F.3d 997. Plaintiff argues that the Court ought to conduct a de novo review of the record. However, the Plan expressly grants Continental discretion to interpret the

terms of the contract and determine eligibility. When a plan governed by ERISA grants discretionary authority to the decisionmaker, federal district courts review decisions for an abuse of discretion. See Firestone, 489 U.S. at 115. "Abuse of discretion" and "arbitrary and capricious" are interchangeable terms for a standard that is deferential to the Plan administrator. Under Fought, if the administrator is operating under a conflict of interest, the degree of deference decreases. 379 F.3d at 1005. The burden is upon the plaintiff to prove a conflict of interest. Id.

Continental denies operating under a conflict of interest and requests a heightened "arbitrary and capricious" standard of review. It argues that it does not operate under a conflict of interest because the free market forces insurance companies to approve valid claims to retain customers. Not only is this economic analysis flawed because employers may buffer the effects of market pressure that employees can exert on claims administrators, but also this legal analysis is flawed. Continental admits that it is an insurance company paying benefits out of its own assets. As such, it operates under an inherent conflict of interest. Allison, 381 F.3d at 1021; Fought, 379 F.3d at 1006 ("'as both insurer and administrator of the plan, there is an inherent conflict of interest between its discretion in paying claims and its need to stay financially sound'") (citation omitted). Given the conflict, Continental bears the burden of showing that its decision to terminate plaintiff's LTD benefits was reasonable. It can demonstrate reasonableness by showing that the existence of a conflict did not taint its decision and that the decision was supported by substantial evidence. Fought, 379 F.3d at 1005.

Plaintiff requests a jury trial. However, the rights and remedies available under ERISA are equitable in nature and, thus, plaintiff has no right to a jury trial. See Adams v. Cyprus Amax Mineral Co., 149 F.3d 1156, 1162 (10th Cir. 1998) (holding that participant suing a plan under section 1132(a)(1)(B) is not entitled to a jury trial). Plaintiff's request for a jury trial is denied.

9

Plaintiff requests discovery. However, ERISA review is limited to those materials available to the claims administrator at the time of the final decision and, thus, there is no right to discovery. Chambers, 100 F.3d at 823 ("'[A] district court's review under the arbitrary and capricious standard is limited to the administrative record.'") (citation omitted). Further, parties stipulated in the Joint Status Report (Dkt. # 4) that discovery did not apply to this ERISA action. Plaintiff's request for discovery is denied.

Plaintiff requests that the Court apply a treating physician rule. In Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003), the Supreme Court unanimously held that ERISA does not contain a treating physician rule. Medical information offered by a Plan participant's primary physician is to be considered, but it is not entitled to special deference. Id. at 832. The Supreme Court held that ERISA does not require plan administrators to favor opinions of treating physicians given that "if a consultant engaged by a plan may have an incentive to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" Id. In addition, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physicians' evaluation." Id. at 834. Plaintiff's request for application of a treating physician rule is denied.

**IV.**

ERISA was enacted to protect contractual rights and, consequently, the terms of the Plan dictate. See Firestone, 489 U.S. at 113. The Plan grants Continental discretion to determine eligibility. As a Plan participant, plaintiff has the responsibility to present evidence of continuing disability to qualify for LTD benefits. The focus for this Court is whether Continental was reasonable to deny plaintiff's benefits given the evidence of her post-operative functionality on appeal.

On appeal, Continental asked both plaintiff and her primary physician for medical evidence to confirm the existence of a continuing disability. See Allison, 381 F.3d at 1024 ("[A] plan administrator may request additional medical information, and the Plan here explicitly anticipates such a need."). Continental specifically requested objective test results. However, plaintiff failed to submit updated objective evidence that she was "unable to perform the Material and Substantial Duties of [her] regular occupation" as a customer service representative or other position for which she was qualified based on her education and training.

It is not proper, as plaintiff would have the Court hold, to require the Plan administrator to prove a negative.[2] See Aboul-Fetouh v. Employee Benefits Committee, 245 F.3d 465, 473 (5th Cir. 2001) (finding defendant did not abuse its discretion when it denied a disability claim based on an "evidentiary deficiency" despite the fact that "there is no known etiology for . . . chronic pain, and therefore no way to conclusively establish disabling pain with objective medical evidence."). While it is preferred that a claims administrator secure an independent evaluation of beneficiaries' medical files, such evaluation is not required to establish reasonableness under ERISA. Fought, 379 F.3d at 1015.

Dr. Sherburn's retraction of his conclusion on the February 2002 assessment form results in diminished probative value of both the assessment form and his May 2002 letter claiming disability. Consequently, it was reasonable for Continental to rely on the other medical evidence in the record, such as Dr. Sherburn's office notes and his stated conclusions regarding x-rays and objective tests.

---

[2] As health information privacy is afforded both constitutional and statutory protection, it is improper to assign a duty on plan administrators to retrieve claimants' medical information absent claimants active participation. See, e.g., Lankford v. City of Hobart, 27 F.3d 477, 479 (10th Cir. 1994) ("there is 'no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.'") (citation omitted). Plan participants must, at a minimum, sign a medical release authorization. Therefore, any request that this Court relieve plaintiff of her responsibility to provide evidence of disability is denied.

His conclusions include good motor strength, solid bone fusion, and absence of hardware failure. Further, Dr. Sherburn's opinion that he would not personally release plaintiff to return to work is irrelevant to the issue of whether plaintiff met the Plan's definition of "totally disabled." The Plan does not reference a physician's release to return to work but rather focuses on ability to conduct regular work activities.

Continental's final decision letter on appeal faithfully surveys the medical evidence of record and does not ignore evidence of disability. The record supports the conclusion that, acting in good faith, Continental looked behind the conflicting opinions of Dr. Sherburn to view the medical evidence.[3] It found that the evidence of functionality overwhelmed the evidence of disability. Evidence of plaintiff's capacity to perform in her "regular occupation" was more than a scintilla. Therefore, Continental was reasonable to uphold the termination of plaintiff's LTD benefits.

## V.

In summary, defendant's decision to terminate plaintiff's LTD benefits was an exercise of the discretion granted by the Plan. Viewing the record as a whole, Continental relied upon more than a scintilla of evidence to conclude that plaintiff did not meet the Plan's definition of "totally disabled." The Court finds that defendant's decision to terminate plaintiff's LTD benefits was a "reasoned application" of the terms of the Plan that was supported by substantial evidence. See Allison, 381 F.3d at 1022.

---

[3] The record does not contain evidence that Continental acted in bad faith. Continental paid LTD benefits to plaintiff for six months despite Dr. Sherburn's estimate of three months of "total disability" and despite plaintiff's questionable eligibility given her prior medical leave.

**IT IS THEREFORE ORDERED** that defendant's June 12, 2002 final decision to terminate plaintiff's LTD benefits is hereby **affirmed**.  A separate judgment is filed herewith.

**DATED** this 23rd day of March, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT